THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.*
MARCELINO CUEVAS TOLEDO, Defendant and Appellant.

No. CR-62-196.     Decided October 3, 1963.

*César Vélez González* for appellant. *J. B. Fernández Badillo,
Solicitor General,* and *Jenaro Marchand, Assistant Solicitor
General,* for The People.

Division composed of Mr. Justice Belaval, as Chief Judge of
Division, Mr. Justice Hernández Matos, and Mr. Justice
Santana Becerra.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

The Prosecuting Attorney of the Superior Court of Puerto Rico, Arecibo Part, accused appellant of the crime of attempt to kill because he "unlawfully, wilfully, maliciously and criminally, with malice aforethought and deliberation and with a firm and determined intent and purpose to kill, showing that he had a perverted and malignant heart assaulted and attacked with an iron pipe which is a contusive object, with which grave bodily injury and even death may be caused to a fellow creature, Manuel Colón González, a human being, inflicting several fractures and wounds on different parts of the body of said human being Manuel Colón González, which fractures and wounds are of a serious character." The jury reduced the classification to aggravated assault and battery and the trial court sentenced him to serve 13 (thirteen) months in jail.

On appeal, defendant assigns three errors: (1)—The trial court committed a clear and manifest error in intervening prominently in the direct examination of the evidence of the People; (2) in not giving credit to the theory of self-defense, which arises from the very evidence of the People; (3) in giving certain instructions to the jury.

1—The first error points out the intervention during the testimony of the prejudiced party, Manuel Colón González, (Tr. Ev. 49) and his wife Hirágida Cuevas, daughter of defendant Marcelino Cuevas Toledo (Tr. Ev. 65–89).

The first improper intervention, according to the transcript, is as follows:

"The judge asks:
Q. You said there, upon being examined by one of the attorneys that that eye watered, that it shed tears?
A. Not before this. It is like this, the eye and the ear and this one through which I cannot see, and the mouth, that when I laugh, it only opens on one side.
Q. You say you do not see through one eye?
A. I do not see through this eye.
Q. And before?

A. Before it was all right.

Q. And do you see through the one that shed tears?

A. I do not see very well and before I saw well.

Q. Why do you point to your ear?

A. This one, that every twenty four hours, a noise is going on and I hear nothing through it. I hear through this one.

Judge:—'All right.'

Mr. Vélez:—'Nothing.'

Prosecuting Attorney:—'Nothing.'

Judge:—'You may leave.' "

If one bears in mind the obligation of the Judge who presides at the trial to narrate the evidence presented, it may be explained in cases like this, that the magistrate tries to make clear which were the injuries actually received.

The second improper intervention, during the testimony of Hirágida Cuevas, is as follows:

"The Prosecuting Attorney asks:—'Hirágida. You have stated here to these ladies and gentlemen of the jury, that your father on returning from his house at 6 p.m., with your mother, was carrying this pipe. That you know this pipe because you had seen it in his house. That when your father arrived at the house of Francisco Reboyras, he arrived with this pipe and you say:—'He carried that piece of pipe to defend himself.' Do you remember that?

A—Yes, sir.

Q—When you say that he carried it to protect himself, I ask you, How do you know that his purpose in carrying that pipe at 6 p.m., was to defend himself? How do you know that that was what he had in mind; that what he wanted was to defend himself?

(Witness does not answer)

Judge:—'He is asking you; he wants you to tell him why you said that your father carried that pipe to defend himself.' How do you know it? What reason do you have to say that your father carried that pipe to defend himself?

A—Well, I say it must be to defend himself, because if we met Manuel Colón González, how was he going to protect us?

Judge:—Then you assume that it was to defend himself, or did he tell you, that it was to defend himself from Manuel Colón González?

Witness:—'He did not tell me.'

Judge:—'Did he tell somebody?'

Witness:—'No.'

Judge:—'When you said that it was to defend himself, is it that you believe that was so?'

A—Yes, sir."

Subsequently the judge who presided at the trial intervened again with defendant's daughter, wife of the victim, in the following dialogue.

"The judge questions the witness:—

Q—Look lady. You stated in your testimony that about the 23d, a few days after coming from San Juan, you went to the Health Center of Utuado. You said you had gone to the Health Center or to the hospital?

A—I went to the hospital.

Q—That is, the Health Center and the hospital is the same thing there?

A—It is the same thing.

Q—What doctor treated you there?

A—I do not remember.

Q—How was he? Was he fat?

A—No, sir.

Q—Whoever he was, did he prescribe to you?

A—Yes, sir.

Q—Did your fainting spells disappear with his prescription? Did you go there because of your fainting spells?

A—No, sir. Not fainting spells.

Judge:—'All right.'

Prosecuting Attorney:—'Nothing.'

Counsel:—'Nothing.'

Judge:—'You may leave.' "

■■ On examining the line of reasoning of these interventions within the testimony, it is plain that in the two occasions the presiding judge is seeking to make clear two facts which at that moment he considers have not gone to

the mind of the jury with sufficient clearness. Even though it is always the best practice to leave the relation and enumeration of the details of the event to arise spontaneously from the examination of the prosecuting attorney and the examination of the defense, certain discreet intervention is proper, within the judicial power, for a better understanding of the evidence, provided it can be done without revealing any state of mind which might sway the opinion of the jury. The two interventions in the examination of the presiding judge being examined, they are within the limits established by the case law for judicial intervention.

■ 2—The second error has no basis. In his instruction to the jury the judge gave a reasonable summary of what constitutes "self-defense." In regard to the application of said defense to the events of the case, no motion was made, at any proper time, for defendant's acquittal for insufficiency of the evidence or because the proved facts did not constitute a public offense. It being so, the elucidation of the fact of whether or not defendant acted in self-defense, rested in the jury.

■ 3—Defendant appellant objects as improper and prejudicial the following instruction or comment to the jury:

"I believe, ladies and gentlemen of the jury, that the following circumstance is suitable. The father has the patria potestas, the control and guidance of his daughter and is responsible for her until she attains majority; before God the father is always responsible, but by law, until she is twenty one years of age. Now, her [sic] patria potestas (majority) is reached before she is twenty one years of age when the father emancipates his child or is emancipated by marriage. And Hirágida was married when she was eighteen years old. Then, as a law obligation:— 'The woman shall follow her husband wherever he establishes his residence' and her husband insisted in her going. The girl who is young and has had the blessing of God and nature, of a charming personality, besides the natural charm of youth, did not want to go and he struggled to take

her away. He went to the house and the victim says, 'an argument arose before the date of these events, before the 26 and they came to grips.' That day he came for his wife again and then these events which Colón says arose. That this man, Marcelino Cuevas Toledo, without being attacked by him, without a fight having started, hit him with that pipe which he presented to the prosecuting attorney, first to describe and identify it and then he presented it as evidence. With that pipe he hit him here and here on the elbow, on the elbows."

This side remark on the juridical relations between father and daughter and husband and wife is made by the judge when he summarizes the evidence presented at the trial, perhaps in search of a more lively way to explain the motive. The statement that the obligation of a father to protect his daughter, according to God's law, never ends, might result more beneficial than prejudicial to defendant since it appeals to a feeling of great emotion prevailing in our country. The rest is a weak rhetorical display which although it does not add zest to the flavor of the style, neither does it wither it entirely. In any case in which the verdict of guilty would have been extreme, perhaps we would stop to measure the possible injury which might have been caused to defendant.

The problem here is that the stark wrath of the father inflicts an awful beating to victim, something which is not in keeping with the prudent fear and the degree of punishment which authorizes the "self-defense."

The judgment appealed from will be affirmed.